UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **RONALD AND KATHLEEN LEO** | * | **CIVIL ACTION NO. 16-605** |
| | * | |
| | * | **JUDGE JACKSON** |
| **VERSUS** | * | |
| | * | **MAGISTRATE WILDER-DOOMES** |
| | * | |
| **JELD-WEN, INC.** | * | **A JURY IS DEMANDED** |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

**NOW INTO COURT,** comes defendant, JELD-WEN, INC. ("JELD-WEN"), which submits the following Memorandum in Support of its Motion for Partial Summary Judgment.

**I.     BACKGROUND FACTS**

Plaintiffs filed this suit to recover alleged property damage they sustained as a result of the purchase of JELD-WEN windows.  R. Doc. 2-1, p. 2.  **<u>This lawsuit was originally filed in the 19th Judicial District Court for the Parish of East Baton Rouge on August 30, 2016.</u>**  R. Doc. 2-1.   Plaintiffs allege that "[i]n or about 2007, Leo purchased approximately fifty (50) JELD-WEN windows for installation in their new home…."  R.Doc. 2-1, p. 2.  They allege, "[a]fter purchase and installation of the windows, Leo noticed water infiltration into the home, whereupon Leo reported the condition to the contractor who built the home."  R.Doc. 2-1, p. 2.  Plaintiffs allege that it was determined that all of the JELD-WEN windows contain latent vices and/or

defects and that they "reported same to JELD-WEN, which has inspected the windows, but to date, has offered no solution." R.Doc. 2-1, pp. 2-3.

In their lawsuit, plaintiffs make allegations against JELD-WEN under an express warranty for the windows. R.Doc. 2-1, p. 3. Plaintiffs also make allegations under the implied warranty against redhibitory vices and/or defects. R.Doc. 2-1, p. 3. Only plaintiffs' redhibition claims are at issue in this Motion for Partial Summary Judgment.

Plaintiffs' home was built in 2007 and 2008 by Precision Construction Group. Precision Construction Group and/or its subcontractors installed the JELD-WEN windows in plaintiffs' home.[1]

Plaintiffs admit that they had water infiltration problems immediately upon moving into the home.[2] Kathleen Leo testified that they experienced water intrusion in the windows and doors of the home since they first moved in around December 2008.[3] Further, she testified that she noticed "rotting wood" inside the windows and "puffiness in some of the corners."[4] She observed these conditions while she was working with Rick Vinyard of Precision Construction between December 2008 and Spring 2013 to remediate water infiltration problems.[5] On Exhibit 1 to her deposition, Mrs. Leo identified multiple windows where she observed water intrusion issues.[6]

> Q   Okay. And in all of these windows that
>     you've noted that you saw visible signs of water in
>     and around the windows, were these problems of water

---

[1] Exhibit A, plaintiffs' responses to Interrogatory No. 3.
[2] Exhibit A, plaintiffs' responses to Interrogatory Nos. 7 and 8.
[3] Exhibit B, deposition of Kathleen Leo, pp. 30-32.
[4] Exhibit B, deposition of Kathleen Leo, pp. 84-85.
[5] Exhibit B, deposition of Kathleen Leo, pp. 84-85 and 87.
[6] Exhibit B, deposition of Kathleen Leo, pp. 62-87 and Exhibit 1.

> Q  intrusion symptoms that you saw reported to Rick Vinyard?
> A  Yes.
> Q  And that would have been in between the timeframe of moving into the house in December of 2008 and when Rick eventually stopped work and the repairs in spring of 2013?
> A  Yes.[7]

Mrs. Leo claims that the same water intrusion issues continue in the home to this day.[8]

A portion of Mrs. Leo's communications with Mr. Vinyard are evidenced in an e-mail she sent to Mr. Vinyard on November 7, 2012.[9] Mrs. Leo identified several problems with the home. She reported "some pretty serious moisture problems here."[10] She apparently had "two leak detection companies" at the home to find the source of the leak and "one guy thought is (sic) was the seal around the windows."[11] She also described a "moisture problem around the boy's windows with some puffing up of the sheetrock around the windows."[12]

On or about March 18, 2013, Kathleen Leo submitted an online service request to JELD-WEN.[13] Mrs. Leo wrote, "Our windows are leaking. There is evidence that water is getting through the seals, because when the window is opened we can see where the wood inside the window frame is discolored."[14] She wrote, "[w]e believe some of the water leak issues to be a defect in the

---

[7] Exhibit B, deposition of Kathleen Leo, p. 87 and Exhibit 1.
[8] Exhibit B, deposition of Kathleen Leo, pp. 36-37.
[9] Exhibit C, e-mail from Kathleen Leo to Rick Vinyard dated 11/7/12.
[10] Exhibit C, e-mail from Kathleen Leo to Rick Vinyard dated 11/7/12.
[11] Exhibit C, e-mail from Kathleen Leo to Rick Vinyard dated 11/7/12.
[12] Exhibit C, e-mail from Kathleen Leo to Rick Vinyard dated 11/7/12.
[13] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[14] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."

window itself…."[15]  JELD-WEN Customer Care requested additional information, but Mrs. Leo did not respond.[16]  JELD-WEN closed the Service Request on April 24, 2013.[17]

Mrs. Leo called JELD-WEN Customer Care again on or about July 23, 2013, reporting water leaks and stains on the sides of sash and frame when the window is opened.[18]  JELD-WEN Customer Care identified a service provider, "All-Pro Window and Door," that plaintiffs could call.[19]  Plaintiffs never responded to JELD-WEN Customer Care and the Service Request was closed on August 27, 2013.[20]

Plaintiffs filed a lawsuit against Precision Construction on November 8, 2013.[21]  The lawsuit alleged, *inter alia*, that damages were sustained as a result of "leaks around window caused by improper installation and integration into the exterior wall system" and "systematic failure of the drain plan incorporated into the exterior wall system."[22]  The lawsuit was eventually stayed in favor of arbitration.

Plaintiffs' submitted an Arbitration Demand on March 16, 2015.[23]  In their arbitration demand, they alleged, *inter alia*, the "windows were improperly installed and inadequately

---

[15] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[16] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[17] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[18] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[19] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[20] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[21] Exhibit E, Petition for Damages against Precision Construction.
[22] Exhibit E, Petition for Damages against Precision Construction, paragraph 3.
[23] Exhibit F, Plaintiffs' Arbitration Demand.

waterproofed, including but not limited to inadequate flashing, caulking, and sealing."[24] Plaintiffs eventually settled their claims against Precision Construction and its subcontractors in July 2015.

Mrs. Leo rented a Thermal Imaging Camera from Home Depot on July 15, 2015.[25] She used the camera to photograph the windows in her house because she was "frustrated with no one seeming to get down to the bottom of what our problem was."[26] When she used the camera, she observed "color changes that were different around the window, but [she didn't] know how to interpret that exactly."[27]

The evidence shows that Mrs. Leo was told by a leak detection company that they had an issue with the "seal around the windows" sometime prior to November 7, 2012.[28] The evidence also shows that she had actually observed signs of water intrusion near the windows sometime prior to November 7, 2012.[29] The evidence shows that plaintiffs had actual knowledge that their windows were leaking as of March 18, 2013.[30] The evidence further shows that Mrs. Leo suspected that the windows were the source of water intrusion in her home when she rented a thermal imaging camera in July 2015.[31]

---

[24] Exhibit F, Plaintiffs' Arbitration Demand, paragraphs 95-98.
[25] Exhibit G, Records from Home Depot.
[26] Exhibit B, deposition of Kathleen Leo, pp. 56-57.
[27] Exhibit B, deposition of Kathleen Leo, pp. 48-49.
[28] Exhibit C, e-mail from Kathleen Leo to Rick Vinyard dated 11/7/12.
[29] Exhibit C, e-mail from Kathleen Leo to Rick Vinyard dated 11/7/12.
[30] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[31] Exhibit G, Records from Home Depot.

There is no genuine dispute as to the facts stated above. Thus, there is no genuine issue of material fact regarding when plaintiffs "discovered"[32] the window leaks. In light of the prescriptive period for redhibition claims discussed below, plaintiffs' claims under Louisiana Civil Code article 2520 must be dismissed.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[33] Only factual disputes that might affect the action's outcome under governing law can properly preclude summary judgment; disputes over facts which have no effect on the action's resolution are irrelevant.[34] A factual dispute will not prevent summary judgment if the dispute is not "genuine."[35] Such a conclusion is reached when the evidence could not lead a rational trier of fact to return a verdict for the non-moving party.[36]

The moving party (in this instance, JELD-WEN) has the initial burden of establishing that there is no genuine issue of material fact.[37] Where the moving party bears the burden of persuasion

---

[32] *In re Ford Motor Co. Bronco II Product Liability Litigation*, 982 F.Supp. 388, 395 (E.D. La. September 10, 1997).
[33] See also *Tiger Bend, LLC v. Temple-Inland, Inc.*, 56 F.Supp.2d 686, 688 (M.D. La. June 15, 1999).
[34] *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
[35] *Id.* at 689.
[36] *Id.*
[37] *Id.* (citing *Celotex v. Catrett*, 477 U.S. 317, 323 (1986)).

on an issue at trial, the movant must not only show that there is no genuine issue of material fact, but also the ultimate burden of persuasion on the claim itself by demonstrating that it would be entitled to judgment as a matter of law.[38] Then, the non-moving party is required to come forward with evidence which demonstrates the existence of a genuine issue for trial.[39] Summary judgment is appropriate where the non-moving party cannot establish that there is a genuine issue for trial.

In this case, plaintiffs cannot establish that there is a genuine issue for trial on their redhibition claim because it prescribed prior to their filing suit on August 30, 2016.

B. Prescriptive Period for Redhibition Claims

Louisiana Civil Code article 2534(B) provides that an action for redhibition against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes one year from the day the defect was ***discovered*** by the buyer. (Emphasis added). A seller is deemed to know that the thing he sells has a redhibitory defect when he is a manufacturer of that thing. La. C.C. art. 2545. Plaintiffs accurately allege that JELD-WEN is the manufacturer of the subject windows. R.Doc. 2-1, p. 3.

Under the "discovery rule," prescription does not commence until the date the plaintiff discovers or should have discovered the facts upon which his cause of action is based.[40] In determining when plaintiff should have known the basis for his claim, the focus is on the reasonableness of the plaintiff's action or inaction.[41] Prescription begins to run from the time there

---

[38] *Id.*
[39] *Id.*
[40] *Tiger Bend, LLC*, 56 F.Supp.2d 686, 692 (citing *Corsey v. State, through Dept. of Corrections*, 375 So.2d 1319, 1322 (La. 1979).
[41] *Id.*

is sufficient notice as to call for inquiry about a claim, not from the time when the inquiry reveals facts or evidence sufficient to **prove** the claim.[42]

### C. Plaintiffs' Redhibition Claims Are Prescribed

In this case, defendant can easily satisfy its initial burden of proving that plaintiffs discovered the alleged defect more than a year prior to the filing of their lawsuit. Defendant denies the existence of any defects in the windows. However, to the extent plaintiffs allege there are defects in the windows, the information and evidence that allegedly supports their claims was available well before one year prior to filing of this lawsuit on August 30, 2016. R. Doc. 2-1.

### i. Plaintiff Knew or Should Have Known of the Alleged Defects in the Windows as of November 7, 2012

On November 7, 2012, Mrs. Leo wrote, "I have had two leak detection companies out here to check, but no one is sure where the leak is … One guy thought is (sic) was the seal around the **windows**."[43] As of November 7, 2012, Mrs. Leo had actually observed signs of water intrusion near the windows such as "puffing up of the sheetrock around the **windows**."[44] In response to her 11/7/12 e-mail, Rick Vinyard outlined a recommended plan of action including: "inspect all **windows**," "replace as necessary all **window** gaskets," and "caulking of **windows** and doors as necessary."[45] Plaintiffs should have known of a potential defect in the windows when Mrs. Leo

---

[42] *David v. Meek*, 710 So.2d 1160, 1163 (La. App. 1 Cir. 1998)(citing *Maison Blanche, Inc. v. Louisiana Dept. of Labor, Office of Employment Security*, 604 So.2d 670, 674 (La. App. 1 Cir. 1992)). (Emphasis in original)
[43] Exhibit C, e-mail from Kathleen Leo to Rick Vinyard dated 11/7/12. (emphasis added)
[44] Exhibit C, e-mail from Kathleen Leo to Rick Vinyard dated 11/7/12. (emphasis added)
[45] Exhibit H, e-mail from Rick Vinyard to Kathleen Leo dated 11/14/12. (emphasis added)

observed damage around the windows and Mr. Vinyard was recommending repair work to the windows. Plaintiffs' redhibition claim was prescribed as of November 8, 2013.

        ii.    *Plaintiffs Knew of the Alleged Defects in the Windows as of March 18, 2013*

Plaintiffs submitted an online service request to JELD-WEN Customer Care which stated: "Our windows are leaking."[46] Plaintiffs further wrote, "[t]here is evidence that water is getting through the seals, because when the window is opened we can see where the wood inside the window frame is discolored."[47] Mrs. Leo admitted that she submitted that online service request, but claimed that she was "just following what [Rick Vinyard] was leading me."[48] Regardless of the reason for her service request to JELD-WEN, there is no dispute that plaintiffs believed they had defects in their windows as of March 18, 2013. At a bare minimum, plaintiffs had "sufficient notice as to call for inquiry about a claim."[49]

Even using plaintiffs' "discovery" date of March 18, 2013, plaintiffs' redhibition claims were prescribed as of March 19, 2014.

        iii.    *Plaintiffs Knew of the Alleged Defects in the Windows as of July 23, 2013*

Plaintiffs called JELD-WEN Customer Care on or about July 23, 2013, to report "water leaks." Specifically, plaintiffs reported, "stains on sides of sash and frame when window is opened and on other – leak around the window somewhere (sic)."[50] In response, JELD-WEN Customer

---

[46] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[47] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[48] Exhibit B, deposition of Kathleen Leo, p. 150.
[49] *David*, 710 So.2d at 1163.
[50] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."

Care identified "All-Pro Window and Door" as someone who could inspect the windows.[51] A representative of JELD-WEN Customer Care, Marcy, e-mailed Mrs. Leo on August 7, 2013, as a "FOLLOW UP FOR DETAILS FROM INSPECTION."[52] The case was closed by JELD-WEN Customer Care on August 27, 2013.[53] During the next two years, plaintiffs were involved in the lawsuit and arbitration against Precision Construction and its subcontractors.

Even using plaintiffs' "discovery" date of July 23, 2013, plaintiffs' redhibition claims were prescribed as of July 24, 2014.

    iv.    *Plaintiffs Knew of the Alleged Defects in the Windows as of July 15, 2015*

Mrs. Leo rented a thermal imaging camera from Home Depot on July 15, 2015, to take obtain thermal images of the windows.[54] Mrs. Leo offered the following testimony regarding her use of the thermal imaging camera:

> Q    So you-all didn't provide any thermal imaging photos to Mr. Connell or anyone else because you've never had any, is that what you're telling me?
> A    I rented a thermal imaging camera and I played around with it and took pictures of windows in my house, but I never hired anybody to do it.
> Q    Okay. Do you remember when you rented a thermal imaging camera and did that?
> A    I don't remember when it was, exactly.
> Q    Do you remember from whom you rented it?
> A    From Home Depot.
> …
> Q    What did you glean from using the thermal

---

[51] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[52] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[53] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[54] Exhibit G, Records from Home Depot.

        imaging camera?
    A  Well, there looked to be color changes
        that were different around the window, but I don't
        know how to interpret that exactly.
    Q  Do you remember when you did that, what
        date or year?
    A  It was -- I don't remember. All I can say
        is I don't remember.[55]

Mrs. Leo performed her own informal investigation of the windows using a thermal imaging cameras in July 2015. Although she did not know how to interpret the pictures, there can be no dispute that she had sufficient notice of an alleged defect in the windows as to "call for inquiry about a claim"[56] by the time she returned the camera to Home Depot on July 22, 2015.[57]

   Thus, even if the "discovery" date is July 22, 2015, plaintiffs' redhibition claim was prescribed as of July 23, 2016.

   D. <u>Prescription Was Never Interrupted</u>

   Prescription is interrupted when the seller accepts the thing for repairs and commences anew from the day he tenders it back to the buyer or notifies the buyer of his refusal or inability to make the required repairs.[58] There is no evidence that JELD-WEN ever accepted the windows for repair in response to plaintiffs' complaints on March 18, 2013, and July 23, 2013.

   In the case of *Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*,[59] Thompson filed suit alleging redhibitory defects in trailers manufactured and sold to plaintiff by defendants.

---

[55] Exhibit B, deposition of Kathleen Leo, pp. 47-49.
[56] *David v. Meek*, 710 So.2d 1160, 1163 (La. App. 1 Cir. 1998)(citing *Maison Blanche, Inc. v. Louisiana Dept. of Labor, Office of Employment Security*, 604 So.2d 670, 674 (La. App. 1 Cir. 1992)). (Emphasis in original)
[57] Exhibit G, Records from Home Depot.
[58] La. C.C. art. 2534(C).
[59] 680 F.Supp. 803 (W.D. La. August 20, 1987).

Defendants, Dorsey and Cortec, filed motions for summary judgment pleading that prescription barred plaintiff's claim.[60] Defendants argued that plaintiff was aware of alleged defects no later than 1984 but that the suit was not filed until June 1986.[61] Thompson argued, in part, that: "1) Prescription was interrupted by acts of Dorsey which lulled plaintiff into believing that the defects in the trailers could be eliminated, and 2) Prescription did not toll because plaintiff did not know the true cause of the defects until after suit was filed and discovery commenced."[62]

Thompson claimed that a letter dated 8/12/82 served to interrupt prescription. The Court held that subject letter "was merely a response to a customer's complaint."[63] Further, the letter indicated that the trailers were structurally sound and the problems could be avoided if maintenance was undertaken.[64] Thompson also claimed Dorsey represented to Thompson's maintenance director that, "proper maintenance would maintain the useful life of the trailers."[65] Upon reviewing the evidence, the Court held that "[i]t is clear that Dorsey did not commit to correcting any alleged defect in the trailers."[66] The Court wrote:

> Where a correspondence between a buyer and a manufacturer does not constitute anything other than an investigation of the buyer's complaints, without any indication that the buyer was mislead into believing that manufacturer intended to take action to remedy a defect, the one year prescriptive period is not suspended. *People's Water Ser. v. Menge Pump & Machinery,* 452 So.2d 752 (La.App. 5th Cir.1984), writ refused, 456 So.2d 1391.[67]

---

[60] *Id.* at 803.
[61] *Id.*
[62] *Id.* at 803-804.
[63] *Id.* at 805.
[64] *Id.*
[65] Id. at 805
[66] *Id.*
[67] *Id.*

In this case, JELD-WEN made no attempts to repair the windows upon receiving plaintiffs' complaints on March 28, 2013, and July 23, 2013.[68] Further, JELD-WEN did not make any promises to repair the windows. Instead, JELD-WEN Customer Care requested more information in the form of photographs and an inspection to be performed by an outside service provider. The plaintiffs never responded to these requests and the claims generated in March and July 2013 were closed.

Louisiana rules of prescription are in place for precisely this type of situation. The reason for a short prescriptive period in redhibitory actions is the practical necessity to determine promptly and certainly whether article sold did or did not have the vices claimed.[69] In this case, under Louisiana law, JELD-WEN was not required to wait for years while plaintiffs pursued other avenues of recovery for water intrusion issues in their home. Plaintiffs' redhibition claim prescribed well before they filed this lawsuit on August 30, 2016.

## III.   CONCLUSION

As outlined above, there is no genuine issue for trial on plaintiffs' redhibition claim. Their redhibition claim is barred by prescription under Louisiana Civil Code article 2534(B). Thus, JELD-WEN respectfully requests that the Court grant this Motion for Partial Summary Judgment and dismiss plaintiffs' redhibition claim with prejudice.

---

[68] Exhibit D, Affidavit of Wallace Dale Corwin and "CIT Notes."
[69] *PPG Industries, Inc. v. Industrial Laminates Corp.*, 664 F.2d 1332 (U.S. 5th Cir. 1982).

Respectfully submitted,

*/s/ Trevor C. Davies*
PETER J. WANEK (23353)
TREVOR C. DAVIES (32846)
KATHRYN T. TREW (34116)
McCRANIE, SISTRUNK, ANZELMO,
HARDY, McDANIEL & WELCH, LLC
909 Poydras St., Ste. 1000
New Orleans, LA 70112
Telephone: (504) 831-0946
Facsimile: (800) 977-8810
ATTORNEYS FOR DEFENDANT
*JELD-WEN, INC.*

## **CERTIFICATE OF SERVICE**

I do hereby certify that a copy of the above and foregoing was filed electronically with the Clerk of Court using the CM/ECF. Notice of this filing will be sent to all counsel by operation of the court's electronic filing system and e-mail this 15th day of September, 2017.

_____*/s/ Trevor C. Davies*_____