UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

RONALD LEO AND KATHLEEN LEO            CIVIL ACTION

VERSES

JELD-WEN, INC.            NO.: 16-00605-BAJ-EWD

## RULING AND ORDER

Before the Court are the **Motion to Exclude the Reports, Opinions and Testimony of Lee R. Connell (Doc. 16)** and the **Motion in Limine to Exclude Videos and Videography (Doc. 46)** filed by Defendant, Jeld-Wen, Inc., and the **Motion in Limine to Exclude Evidence and Testimony of Settlement from Trial (Doc. 47)**, filed by Plaintiffs, Ronald Leo and Kathleen Leo. For the following reasons, the motions are **GRANTED IN PART** and **DENIED IN PART**.

I.    **BACKGROUND**

In 2007, Plaintiffs purchased approximately fifty windows for installation in their home, which was then under construction in East Baton Rouge Parish, Louisiana. (Doc. 1-1 at ¶¶ 2–3). Defendant, an Oregon corporation, manufactured and sold the windows. (*Id.* at ¶¶ 1–2). After installation, Plaintiffs noticed that water infiltrated their home, and after several attempts to stop the water, Plaintiffs ultimately concluded that Defendant's windows were to blame. (*Id.* at ¶¶ 3–4). Plaintiffs filed suit in state court, claiming that the windows contained rehibitory defects, for which Defendant was liable under Louisiana law. (*See Id.*). Defendant removed the case to federal court. (*See* Doc. 1).

## II. DISCUSSION

### A. Motion to Exclude Expert Report

Defendant does not question Lee Connell's qualifications, but it argues that his methodology is unreliable. (Doc. 16-1 at p. 6). Defendant claims that Connell's expert report relied on a test, which consisted of spraying one of the windows with a hose, that failed to conform to standardized practices. (*Id.*).Specifically, it failed to conform with the American Society for Testing and Materials ("ASTM")[1] E-1105 protocol. (*Id.*). The E-1105 protocol is a field test for windows which are suspected of leaking. Plaintiffs argue that Connell's testing was in accordance with the ATSM E-21820-12 protocol, which is a broader methodology for determining the source of water intrusion. (Doc. 29 at p. 2).

Federal Rules of Evidence 702 governs the admissibility of expert testimony. Rule 702 states that a witness "qualified as an expert by knowledge, skill, experience, training, or education" is permitted to testify if:

> (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based upon sufficient facts or data;

---

[1] According to the United States Court of Appeals for the Third Circuit:

> ASTM is a . . . non-profit corporation whose mission is to provide a forum for volunteer technical experts to develop and publish standards for materials, products, systems, and services. ASTM also develops methods for testing different properties and materials. ASTM has an approximate total membership of 30,000, drawing individuals from academic institutions, government agencies, consulting groups, testing laboratories, and private corporations. ASTM has 136 technical committees that do the actual work of developing standards. These committees are broken down further into 2,200 subcommittees and some 6,000 different task groups.

*Am. Soc'y for Testing & Materials v. Corrpro Cos., Inc.*, 478 F.3d 557, 559 (3d Cir. 2007).

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 is effectively a codification of the United States Supreme Court's opinion in *Daubert*, in which the Supreme Court held that trial courts should serve as gatekeepers for expert testimony and should not admit such testimony without first determining that it is both "reliable" and "relevant." 509 U.S. at 589. *Daubert* was concerned with limiting speculative, unreliable, and irrelevant opinions from reaching a jury. *Id.* at 589 n.7. However, "the importance of the trial court's gatekeeper role is significantly diminished in bench trials . . . because, there being no jury, there is no risk of tainting the trial by exposing a jury to unreliable evidence." *Whitehouse Hotel Ltd. P'ship v. Comm'r of Internal Revenue*, 615 F.3d 321, 330 (5th Cir. 2010).

The validity or correctness of the conclusions an expert reaches is for the fact finder to determine after the *Daubert* analysis. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002). "Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Notes to 2000 Amendments).

Rule 703 provides that the facts or data supporting an expert's opinion "need not be admissible in evidence in order for the opinion or inference to be admitted" if

3

the facts or data are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed. R. Evid. 703. Trial courts "should defer to the expert's opinion of what data they find reasonably reliable." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1432 (5th Cir. 1989). The number of sources on which an expert may reasonably rely "is virtually infinite," and such sources include interviews, reports prepared by third parties, scientific theories or test results, clinical and other studies, technical publications, business, financial, and accounting records, economic statistics, opinions of other experts, and general knowledge or experience. Jack B. Weinstein and Margaret A. Berger, 4 Weinstein's Federal Evidence § 703.04[3], at 703-15 to 703-20 (2d ed. 2005).

The E-21820-12 protocol "is intended to provide . . . a comprehensive methodology for evaluating water leakage through walls." (Doc. 29-4 at p. 2). The protocol follows increasingly intrusive sequence of analysis: (1) a review of project documents, (2) an evaluation of design concepts, (3) a determination of service history, (4) a visual inspection, and (5) investigative testing. (*Id.* at pp. 2–4). . However, the E-212820-12 protocol states that it is a flexible standard and that in many cases a water test is not required. (*Id.*). Moreover, the E-212820-12 protocol states that some leakage problems can be diagnosed with little or no testing. (*Id.*). As stated, the E-1105 protocol is a method for determining whether installed windows are leaking by systematically exposing the windows to sprays of water.

The Court finds that Connell's testimony should be allowed because the E-21820-12 protocol provides a reliable framework for analyzing the leaks in the

4

window, and the protocol allows the expert to have some flexibility—recognizing the expense and intrusiveness involved in testing inhabited buildings. Moreover, it appears that Connell has hewn loosely to the protocol when conducting his report. Therefore, his testimony is sufficiently reliable under Rule 702. Connell's failure to follow the E-1105 protocol for water testing and other alleged shortcomings can be the subject of vigorous cross examination.

**B. Motion to Exclude Videos and Videography**

Defendants seek to exclude evidence of any videos or photographs showing leaking windows because they were not produced during the discovery period. (Doc. 46-1). In response, Plaintiffs clarify that the only video it intends to introduce concern the removal of windows, pursuant to the Court's Order granting limited additional discovery. (Doc. 39).

The Court finds that any video of windows being removed are within the scope of the Court's Order that reopened discovery related to the extraction of windows. (*See id.*). Accordingly, this motion is denied.

**C. Motion to Exclude Evidence of Settlement**

Plaintiffs request the exclusion of any evidence or testimony of their settlement of their arbitration with Precision Construction Group, the builder of their home. (Doc. 47-1 at p. 1). The lawsuit and arbitration demand are not subject to this motion, only the ultimate settlement. (*Id.*). Defendant argues that it should be allowed to introduce the settlement to show that Plaintiffs have already recovered a large amount of the damages that they now seek from Defendant. (Doc. 53 at p. 3).

5

Rule 408 prohibits "[e]vidence of the following . . . —on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach . . . : furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising . . . the claim." However, "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408.

Although the United States Court of Appeals for the Fifth Circuit has allowed evidence of damages to "complete the story" about why other parties are not involved in the litigation, *Latiolais v. Cravins*, 574 F. App'x 429, 435 (5th Cir. 2014) (unpublished) (per curiam), the Fifth Circuit has held that it is reversible error to introduce the *content* of the settlement agreement. *Id.* (citing *Branch v. Fid. & Cas. Co. of N.Y.*, 783 F.2d 1289, 1294 (5th Cir. 1986)). Therefore, the Court will allow Defendant to introduce the fact that Defendants settled claims with Precision Construction group; however, under the rules of evidence, the amount of the settlement agreement may not be introduced.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's motion (Doc. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's motion (Doc. 46) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion in Limine to Exclude Evidence and Testimony of Settlement from Trial (Doc. 47) is **GRANTED IN PART** and **DENIED IN PART**.

Baton Rouge, Louisiana, this 7th day of September, 2018.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**